UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

                           :

**BRAYAN ORLANDO BANEGAS
VILLATORO**,                      :

                 Petitioner,     :    **MEMORANDUM DECISION
                                       AND ORDER**
                                        :

           – against –             :    26-CV-1210 (AMD)

                                        :

**CHRISTOPHER SHANAHAN,** Field Office     :
Director, and **US IMMIGRATION AND
CUSTOMS ENFORCEMENT**,             :

                 Respondents.    :

------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

On February 28, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and

detained the petitioner, who is currently being held in the Metropolitan Detention Center

("MDC") in Brooklyn, New York.  (ECF No. 8 at 2; ECF No. 9.)[1]  The petitioner seeks a writ of

habeas corpus, pursuant to 28 U.S.C. § 2241.  (ECF No. 1.)  The Court denies the petition, as

explained below.

## BACKGROUND[2]

The petitioner is a citizen of Honduras.  (ECF No. 8 at 1.)  He first entered the United

States without inspection on April 24, 2018.  (*Id.*)  On April 25, 2018, ICE issued him an I-860

---

[1] The petitioner was initially taken to the Nassau County ICE Intake, and then to the Nassau County
Correctional Center.  (ECF No. 8 at 2.)  About five hours after the petition was filed, but before the
Court entered the order to show cause and directed the government not to remove the petitioner from the
United States or transfer him out of the Eastern District, the petitioner was transferred to Delaney Hall
Detention Facility in New Jersey.  (*Id.*)  On March 6, 2026, the Court ordered that the petitioner be
transferred back to the Eastern District, (*ECF Order dated Mar. 6, 2026*); the petitioner was transferred
to the MDC in Brooklyn on March 9, 2026.  (ECF No. 9.)

[2] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties'
submissions, including exhibits.  *See Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *2 n.1

Notice and Order of Expedited Removal and referred him to U.S. Citizenship and Immigration Services ("USCIS"), which determined on June 26, 2018 that he should be removed from the United States to Honduras.  (*Id.*)  On July 2, 2018, ICE removed him to Honduras.  (*Id.*)  The petitioner re-entered the United States without inspection on September 15, 2018.  (*Id.*)  On September 20, 2018, ICE reinstated the June 26, 2018 order of removal, and removed the petitioner to Honduras on September 24, 2018.  (*Id.*)  On February 9, 2019, the petitioner re-entered the country again, also without inspection.  (*Id.*)  On February 11, 2019, the petitioner, represented by counsel, pled guilty in the United States District Court for the Southern District of Texas to entering the United States illegally in violation of 8 USC § 1325(a)(1).  (*Id.*)[3]  On February 25, 2019, ICE reinstated the June 26, 2018 removal order, and removed the petitioner to Honduras on March 11, 2019.  (*Id.* at 2.)  The petitioner re-entered the United States without inspection for a fourth time at an unknown time and place.  (*Id.*)

On February 28, 2026, ICE officers "observed a person that matched the [the petitioner's] physical description and photo" get into a car.  (*Id.*)  The officers checked the license plate and discovered that the car was "registered to an individual who was a citizen and national of Honduras with no lawful status in the United States."  (*Id.*)  The officers believed that the petitioner was the person to whom the car was registered.  (*Id.*)  Officers stopped the car later that day, identified themselves as ICE offices, and asked for identification.  (*Id.*)  The petitioner rolled up the driver's side window, and refused to comply with the officers' directions, in English and Spanish, to roll down the window.  (*Id.*)  He also refused to comply when they told him, in English and Spanish, to get out of the car because he was under arrest.  (*Id.*)  At one

---

(E.D.N.Y. Oct. 6, 2025); *Munoz Materano v. Arteta*, No. 25-CV-6137, 2025 WL 2630826, at *1 n.1 (S.D.N.Y. Sept. 12, 2025).

[3] The petitioner was sentenced to fifteen days in prison.  (ECF No. 8 at 1.)

point, the officers saw the petitioner reach toward the car's center console, so they broke the driver's side window, unlocked the door, removed the petitioner from the car, and took him into custody. (*Id.*)[4] The petitioner had a New York State driver's license in his name. (*Id.*) The officers did a further check to confirm his identity, got an I-205 warrant of removal/deportation, and arrested the petitioner pursuant to that warrant. (*Id.*)

On February 28, 2026, ICE reinstated the June 26, 2018 removal order. (*Id.*) On March 2, 2026 at 6:06 p.m., the petitioner's counsel filed a form petition for habeas relief. (ECF No. 1.) On March 3, 2026, the Court ordered the government to show cause why the petition should not be granted. (*ECF Order dated Mar. 3, 2026*.) The government responded to the order to show cause on March 10, 2026. (ECF No. 8.) The petitioner filed a reply on March 12, 2026. (ECF No. 10.) In his reply, the petitioner raised a Fourth Amendment argument, which he did not make in the petition. (*Id.*) The Court directed the government to reply (*ECF Order dated Mar. 12, 2026*), which the government did on March 16, 2026 (ECF No. 11.) On March 31, 2026, the Court held a hearing. (*ECF Minute Entry dated Mar. 31, 2026.*) The parties then filed supplemental letters to address issues raised at the hearing. (ECF Nos. 12, 13.)

### LEGAL STANDARD

A petition for a writ of habeas corpus under Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-

---

[4] At the hearing, counsel claimed that the petitioner complied with the officers' instructions; counsel maintained that he lowered his window enough to give the officers his identification, but that they broke the window anyway, and took him out of the car.

4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

In seeking a writ of habeas corpus, the petitioner alleges that his detention is "without statutory authority" and violates due process. (ECF No. 1-2 at 7.) He asserts that his continued detention is arbitrary and punitive because he poses no danger or flight risk, that it serves no legitimate governmental interest, and causes ongoing irreparable harm. (*Id.*) He seeks immediate release from ICE custody and an injunction preventing the government from re-detaining him without lawful authority. (*Id.* at 8.) The government responds that the Court does not have jurisdiction to grant the petitioner's request for release, because the petitioner is indirectly challenging an order of removal, which only the Court of Appeals can review, pursuant to 8 U.S.C. § 1252(a)(5). (ECF No. 8 at 3–5.) In the alternative, the government maintains that the petitioner is subject to mandatory detention pursuant to 8 U.S.C. §§ 1231(a)(5) and 1231(a)(2)(A) because of his reinstated expedited removal orders, and that the length of his detention does not violate due process. (*Id.* at 5–6.) In reply, the petitioner maintains that the government "does not meaningfully address the central constitutional defect in this case: the stop and arrest of Petitioner by ICE officers were unsupported by reasonable suspicion or a warrant." (ECF No. 10 at 1.) According to the petitioner, the officers did not have "lawful authority" to stop him. (*Id.*) The government counters that the petitioner's civil detention was a reasonable and lawful exercise of federal immigration authority. (ECF No. 11.)

The Court does not have jurisdiction to grant the relief the petitioner seeks. "The REAL ID Act of 2005 amended the immigration laws to provide that '[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate

4

court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter.'" *Delgado v. Quarantillo*, 643 F.3d 52, 54 (2d Cir. 2011) (quoting 8 U.S.C. § 1252(a)(5)). "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." *Id.* at 54–55 (quoting 8 U.S.C. § 1252(b)(9)).

Sections 1252(a)(5) "clearly preclude[s]" district courts from reviewing direct challenges to removal orders. *Id.* at 55. In *Delgado*, the Second Circuit expanded this rule, concluding that district courts are also precluded from reviewing "indirect challenges" to removal orders. *Id.* In that case, Delgado sought to force an adjudication on the merits of a Form I–212 application; the court found that he was making an indirect challenge to a removal order, because an I–212 waiver "is a necessary prerequisite to [the] ultimate goal of adjustment of status," and an "adjustment-of-status challenge is inextricably linked to the reinstatement of [a] removal order." *Id.* (quoting *Morales–Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082–83 (9th Cir. 2010)). The Second Circuit noted, however, "that a suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Id.*

Since *Delgado,* courts "have dismissed a wide variety of indirect challenges to removal orders for lack of jurisdiction." *Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 225 (S.D.N.Y. 2019). For example, courts have determined that requests to stay removal orders are

indirect challenges to those orders. *See e.g., Mamadjonova v. Barr*, No. 9-CV-1317, 2019 WL 6174678, at *6 (D. Conn. Nov. 20, 2019) ("[B]ecause [the petitioner] seeks to have the Court stay his removal so that he can more easily pursue a provisional unlawful presence waiver, with the ultimate goal of staying in the United States, i.e. not being removed, the Court, after *Delgado*, does not have subject matter jurisdiction to hear this challenge."); *Joseph v. U.S. Attorney General*, 17-CV-5008, 2017 WL 6001776, at *1 (E.D.N.Y. Dec. 4, 2017) ("Since District Courts cannot review removal orders, they also cannot consider requests for stays of removal."). Courts have also dismissed cases where the requested relief would leave the government "without a mechanism to enforce the removal order." *Nieto-Ayala v. Holder*, No. 08-CV-8347 LMM, 2011 WL 3918156, at *3 (S.D.N.Y. Aug. 30, 2011); *see id.* ("[I]f this Court were to grant the relief sought and compel the Government to allow [the petitioner] to remain on parole until USCIS adjudicates his asylum application, then the Government would be without a mechanism to enforce the removal order until USCIS has adjudicated his asylum application.").

The government argues that ICE detained the petitioner "for the purpose of effectuating his reinstated removal order;" thus, his request for release is "a challenge to that removal order and an attempt to interfere to the execution of the order," which § 1252 bars. (ECF No. 8 at 5.) The government cites cases in this Circuit — including *Sauceda Henriquez v. Noem*, 25-CV-7023, 2026 WL 111665 (E.D.N.Y. Jan. 15, 2026) and *Villatoro v. Noem*, No. 25-CV-5306, 2025 WL 2880140 (E.D.N.Y. Oct. 9, 2025) — in which courts have held that "§§ 1252(a)(5), 1252(b)(9) and/or 1252(g) bar claims to enjoin ICE from detaining an individual for the purpose of removal." (*Id.* at 4–5.) The petitioner responds that he "does not seek review of the removal order itself," nor is he asking the Court to "invalidate the removal order;" "[i]nstead, he challenges the legality of the stop, arrest, and detention that preceded the reinstatement of that

6

order." (ECF No. 10 at 4.)  However, the petitioner asks the Court to release him immediately from custody, and to order the government not to detain him "without legal authority." (ECF No. 1-2 at 8.)  He also says that he "is in the process of filling an Asylum application," (*id.* at 7), and at the hearing, counsel conceded that the petitioner is challenging his removal order in immigration court.

Under these circumstances, the Court concludes that the petitioner is indirectly challenging his order of removal.  The petitioner is detained pursuant to 28 U.S.C. § 1231 so that he can be removed from the country.[5]  Although the petitioner says that he is not seeking to "challenge, reopen, or otherwise invalidate any removal order" (ECF No. 12 at 1), the "substance of the relief that a plaintiff is seeking," *Delgado*, 643 F.3d at 55, is "[i]mmediate release from ICE custody" and an injunction preventing the government "from re-detaining [him] absent lawful authority" (ECF No. 1-2 at 8).  Releasing the petitioner from mandatory detention would frustrate the government's ability to enforce the removal order; accordingly, the petitioner is making an indirect challenge to the removal order.  *See Sauceda Henriquez v. Noem*, No. 25-CV-7023, 2026 WL 111665, at *4 (E.D.N.Y. Jan. 15, 2026) ("Courts in this circuit have found that a challenge to a petitioner's detention, following an order of removal, constitutes such an indirect challenge to an order of removal."); *Lin v. Borgen*, No. 25-CV-05618, 2025 WL 2158874, at *4

---

[5] "Congress has created an expedited process for aliens who reenter the United States without authorization after having already been removed." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).  Section 1231(a)(5) provides, "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."  A reinstated removal order is a final order of removal, *Guzman Chavez*, 594 U.S. at 534, so the petitioner's detention is authorized by § 1231(a).  Furthermore, the "government is required to detain an alien ordered removed until removal is effected, at least for the removal period." *Turkmen v. Ashcroft*, 589 F.3d 542, 547 (2d Cir. 2009).

(S.D.N.Y. July 30, 2025) ("Petitioner's request to release him from his current detention . . . is, in sum and substance, a challenge to his final order of removal."). The petitioner's request that the Court release him from detention, while he challenges his removal order in immigration court, is "removal-related activity." *Asylum Seeker Advoc. Project*, 409 F. Supp. 3d at 224. The Court does not have jurisdiction to grant the relief the petitioner seeks.

**CONCLUSION**

For these reasons, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is denied.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        April 7, 2026